Good morning and may it please the court, Brad Hoffman, the Federal Defender Office in Detroit, on behalf of the petitioner, in this case, Curtis Parks. This case involves two fairly complicated habeas issues and I want to ensure that I give enough attention to both but I want to begin with the fair cross section claim here. Three judges have reached the merits of this claim, Judge Denise Page Hood, Thomas Ludington and David Lawson. All three have found that there is merit in this claim and in fact, Judge Lawson, as the court is likely aware recently, changed his mind about this case and found that Mr. Parks has a meritorious claim, putting aside for a moment the procedural default question, has a meritorious claim that fairness or the appearance of fairness on his veneer didn't cure the underlying fair cross section violation. No judge has found that this claim doesn't have merit, no federal judge rather. It would be unfair to deprive Mr. Parks of the relief that several other people would likely get because he, as a pro se petitioner, without the foresight of the sort of statistical analysis. Can I ask you a point? So let's get beyond that and let's look at Ambrose. And Ambrose says, okay, there's a prejudice inquiry and now, you know, it says, it leaves open the possibility that the race of the jurors defending the victim might have some relevance in the prejudice inquiry, so that helps you particularly with some of the arguments you've made. But then it says the most important aspect, let's not even call it that, we'll just call it an important aspect, but Ambrose calls it the most important aspect of the inquiry is the strength of the case against the defendant. And I guess I'm just wondering why, as to that issue, that isn't a pretty serious problem here. It's a serious problem. On two fronts. One, I don't see an argument. I mean, I don't actually see an argument on this point, so that's problematic by itself, but I think I kind of understand why there isn't one. It seems like a pretty tough. It seems like a strong case. The evidence was strong here. Yeah, exactly. Absolutely. So, why doesn't, I mean, so even though you may be right that some of these cases deserve hearings, deserve to move on, I'm not sure I'm understanding why this one does. Here's why. In Ambrose, the three of us argued this, I think, for close to two hours, with three combined cases, and nobody took the position that it was possible to show actual prejudice. We all agreed. There's three United States Supreme Court cases say it's impossible, it's unquantifiable, actual prejudice in the structural error context. The court, without any evidence, without any record, without any argument, took the position it is possible, and sent it back for hearings, sent the cases back for hearings. And where we are today, not in this case, this court in Ambrose, the Ambrose panel sent it back for hearings, didn't resolve that on its own. And where we are today, not in this case, but we have a much more robust record, which includes a lot of empirical evidence, saying that minorities are less likely to convict across the board, even accounting for the strength of the evidence. I guess what I'm, just tell me if I'm missing something. I get all that stuff. I'm willing to accept that Ambrose may allow courts to think about it, and whether that requires a new trial, but I can't understand, given what Ambrose said, why a significant part of the inquiry is a threshold question. I mean, for example, don't even make it this case. Just the hypothetical is, it's not just that the defendant doesn't testify. There's just a hundred witnesses that saw the rape. I mean, everybody saw the rape. The defendant doesn't testify. There clearly was a rape. You wouldn't go into all of this evidence about race and veneers, would you? Wouldn't you say? You wouldn't intentionally ignore it. It was counsel for the Attorney General who asked the expert witness during the evidentiary hearing we had in front of Judge Ludington, did you read our brief in the Parks case? Did you see how strong the evidence was there? And the witness said, yes, I did, and yes, my findings would apply under those circumstances. White jurors are less likely. Wait, but giving the evidence from another case. That's true, and that's why a remand is appropriate. I'm not saying that the strength of the evidence is irrelevant. As I understand it, your answer to my question is, if you have a situation where, you know, it's a rape, a hundred people saw it, there's no contrary evidence, you would still send it back. That's what the record shows, and the court should consider the strength of the evidence alongside the empirical evidence, and weigh the two, and make a decision whether or not race could have played a role here. Now, it's my position that the Ambrose. But the defendant got on the stand and admitted he did it. We don't, we talked a little bit at the hearing about the sort of long plea types of cases. Maybe the death penalty cases where somebody goes through the guilt phase just to start setting up mitigation, or maybe they go through trial for whatever other reasons. My example is the guy gets on the stand, he doesn't mean to admit, but he does admit. And he said, yeah, you know, now that you've mentioned it, I did do it. And that still goes back? That's not this case. I know, I know. Yes, that goes back. For an analysis of the strength of the evidence alongside the empirical data. Can I ask you a question that's another iteration of this same point, but emphasizes a different aspect of it? When you look at the opinion in Ambrose, and Ambrose says actual prejudice, and then you go off on all this strength of the evidence stuff, Ambrose also tells us that for consideration of the cross-section claim, who actually showed up, what jurors actually appeared the day of his trial is not a consideration in evaluating the merits of the fair cross-section claim. Is it relevant in the decision with regard to actual prejudice? That's a point that the respondent brought up in their letter brief, and I agree, that's an important question. How, even if we have merit to the claim, how can we show his prejudice when he had four people in the room? You're saying he should have had more than four? I mean, it was the right number. The problem is, is that there was also an under-representation of Hispanics, that we have a 27%... Let's assume that you've got some problems with that. What's the answer to the question? If the court finds that Hispanics is a new claim that was unexhausted and can't reach that and can only focus on the fact that he can't be actually prejudiced because he had four African-Americans in the room, my answer to that is it would be patently unfair for Mr. Parks to be looking in when this court has an opportunity to re-examine Ambrose in light of the empirical record that we're developing in the district courts now. He has a meritorious claim on the merits. Unfair. Unfair. I mean, assume we're bound by Ambrose. I have some questions, frankly, about Ambrose and this actual prejudice claim, given the nature of a cross-section violation. I think there will be a time to re-examine that. But right now, we're operating within Ambrose, and we're considering actual prejudice. Do we consider the racial composition of the panel that actually appeared on the day of trial? I think the court can. But I also... Okay. That was my question. I think the court can. I mean, for actual... Ambrose says that, you think? Ambrose says for purposes of the underlying claim, you don't focus on the veneer. You focus on the larger pool, and that's the same thing respondents said all along. But in terms of actual prejudice, if we ignore Hispanics, I see the difficulty in making the argument that it should be different. We had exactly what we should have had. But the problem is, we were excluding Hispanics, both through the fair cross-section violation and the equal protection claim violation. It's not a claim here. He disavowed it. That's correct. He didn't want to exhaust that claim. Your argument would be, even if you take into account the racial composition of the panel that appeared on the day of trial, the day of jury selection, and even if you take into account the strength of the case against Mr. Parks, there is still something to consider on remand, and that would be, with respect to actual prejudice, and that would be evidence of the type that's been developed. Absolutely. Okay. Absolutely. But in other cases. In other cases. But if you remand, presumably... This court, I think, is going to have to confront the difficulty with Ambrose that... Yes. But if we remanded this case, then the difficulty would be, in the first instance, that of the district court to figure out how to evaluate actual prejudice.  But that's what district courts are for. I mean, again, maybe I'm just missing this, but it just doesn't seem fair to the district court. We've got Ambrose saying... I couldn't agree more. ... the most important aspect is the strength of the case. You're saying, it doesn't matter how strong it is, send it back so they can kind of think of it all. It seems to me, don't we owe it to them to say, listen, and I know this doesn't help your client, but I'm just telling you straight up my instinct, there are some cases that don't get further inquiry. There are some sufficiently weak cases, or ones where there just isn't a plausible prejudice argument as to the merits, and we're narrowing what an Ambrose claim is. Narrowing just by saying it's not everything, which is, I think, and I get why you're arguing it's everything, but I just can't imagine, what's a district court supposed to do? How do you weigh, you know, it's how long something is versus how much weight it has? This sounds like the argument I made in Ambrose, that this is sort of a pointless exercise and that we're asking far too much of district court judges to say that state court juries were racist, really, but that's what it did, and so it would be unfair to exclude this case from the class, when the underlying merit... Not based on what Ambrose says. Well, again, Ambrose, I think there will be a time when the record is there to re-examine that. What happens? There wasn't the argument, there wasn't the record in Ambrose, and again, my primary point as to this is, as to Hispanics, that is not a separate claim. He was a pro se petitioner. He said African Americans were excluded. He could have said minorities, and the state court would have kicked him out of court for the same reason. That he didn't raise the claim before the jury was sworn. It had nothing to do with the term he used, African Americans versus minorities. The claim was preserved, and based on Hispanics alone, that's something that the district court should be allowed to consider. We have a little bit of time left, but I do want to talk... Yeah, I was just trying to move you to the Batson claim. The Batson claim, I think, in many respects, is a stronger claim here. In this court, I don't know if Judge Gibbons, Judge Sutton, I made this argument a few years ago in a case called McCoy versus Jones. You didn't reach it. Judge Sutton, you were on a panel in Ballinger, you were on a panel in Moore versus, the name escapes me now, but two cases saying in dicta, really, that if the state court resolves a claim on the merits, you can't have a hearing in federal court. And I said it with all respect, that's just wrong. That's not what Penholster says. Unless Justice Breyer was reading Penholster wrong, that's not what it says. What it says is, you resolve 2254D based on the state court record. But in a case like this, he asked for a hearing consistently, all along. He alleged every fact that he needed to prove. He's in a little bit different situation from a lot of the defendants who don't do that, though. He is. He's in a much more advantageous position, thank goodness, for his appellate counsel who saw the issue, who alleged those facts. But this situation is not uncommon. These catch 22 rulings by the Michigan appellate courts would say, we're not going to give you a hearing because you haven't proven your claim. This court has an opportunity, in this case, to substantially improve the quality of state court post-conviction litigation in Michigan. I don't see how in the world, though, this just keeps bothering me. If you sent this case back for an evidentiary hearing, it is impossible to replay what happened 10 years ago. And whose fault is that? I mean, that's just impossible. And whose fault is that? Mr. Parks asked for a hearing within a year. I think the defendant is in some ways disadvantaged by that because, I mean, the government . . . He may be, but he's . . . I mean, he's got theoretically a prima facie case of discrimination, but now the government can look up, look at a code record, and perhaps the government says, well, I don't have any idea what was in my mind, or the state says, or perhaps it articulates any old reason that might not in fact have been in the mind. It just seems the reliability of such a hearing is very much open to question. Absolutely, but that's not an excuse to deprive him of the only hearing he ever . . . I'm not suggesting it is. I'm just saying it's kind of a worthless exercise in terms of actually determining the merits of the issue. I don't believe it is a worthless exercise because it puts pressure on the state courts. Penn Holster was a game changer, absolutely, Judge. And you were right when you said to me a few years ago that this is not a good case for But as the Seventh Circuit now has recognized, the Fifth Circuit has now recognized, when the state courts don't give you that hearing that you need to prove your claim, the federal hearing is de novo now. And what stronger incentive can there be for the state courts to give somebody the first shot? That's supposed to be the main event. When he brings it up to the state court within a year, they need to give him the hearing. And if they make the finding that there was a strategic reason or there was no discrimination, that's basically going to be untouchable on habeas under 2254D. But if they punt, they can't claim shelter under AEDPA when they wouldn't resolve the factual issue themselves. Your red light's on. Judge Morris. Yes. I'm just making sure I'm understanding. What if there's still deference to state courts about whether to have a hearing, though, right? Yeah. So why wouldn't this work this way, that, you know, you ask for the hearing in state court, which happened. State courts now, we just don't think one's warranted because we think, on the record, we can deal with the claim. And I guess what I'm struggling with a little bit is, don't you have to pierce that before you get a federal hearing? And that seems like a very tough thing to pierce. It's like an evidentiary ruling. The state court has the complete prerogative to say, based on the allegations you've given us, you're not entitled to relief for the following reasons, okay? And if that's a reasonable decision based on the allegations before the court, then it stands up under 2254D. But the allegations we have here are that the prosecutor exercised her peremptories for racist reasons, for racially prejudicial reasons, and that a Batson objection would have been sustained. Those are the allegations. So the state court wants to rely on the allegations themselves, go ahead, but at your own peril. If that's not where you want to be, remand it for a hearing. Does the record show how many peremptories were used by the prosecution? I believe it does, but I can't say for certain. I know all four African Americans were excused and perhaps one Caucasian, but I'm not certain about that. I think it's unknown. It seems like there were five peremptories, if I'm not available, if I'm not confusing this with some other case. I think so. Thank you. There's no further questions. Thank you. May it please the court, Your Honors, John Pallis, Assistant Attorney General for the Warden Paul Klee. Appellant has asked this court to remand this matter back to district court so that it can be the one to determine whether or not there is an actual prejudice so as to excuse the procedural default of his fair cross-section claim under Ambrose v. Booker. And I think as Judge Sutton, as you were alluding to during the discussion with Brother Counsel, I think such a remand on the facts of this particular case is entirely unnecessary and quite frankly would be a waste of time. And the reason I think has a little bit more to do than just the overwhelming strength of the evidence, and I can get into that a little bit later, but one of the factors, and I think you alluded to it, Judge Gibbons, in questioning Brother Counsel was the fact that Parks had four African Americans on his 45-person veneer. What's interesting about that particular fact is that that almost perfectly mirrors the evidence in Kent County, Michigan. In other words... But Ambrose said we didn't look to that, correct? In deciding whether or not there was a fair cross-section problem. For the merits of a fair cross-section claim, that's correct. You would look at a range of veneers, not necessarily the veneer that the petitioner had. But what we're asserting is that that evidence may be, while not as applicable to a merits adjudication of a fair cross-section claim, is nonetheless very powerful and very relevant when we're looking to determine whether or not Parks has shown the requisite actual prejudice under Ambrose. Is there a case that you would rely on to say that the presence of the four African Americans on the veneer is relevant to prejudice? I don't have a case citation specifically, and it's something that may very well be this opinion. But certainly... And I agree with... So why should it differ, depending on the merits, as you put it, versus the actual prejudice issue, whether there were four on the veneer of 45? Well, because in terms of actual prejudice, we're looking at his trial, his petit jury, his veneer. Those are the things that we look at, in addition to the evidence, to determine whether or not there was actual prejudice. In terms of a merits adjudication of a fair cross-section claim, that is much dicier. And I think I have to agree with Brother Counsel that I think after, especially after the Ambrose decision, trying to say, well, there were the presence of four African Americans, that somehow, that shows no disparity for purposes of the second prong of Duren, I'm not so sure that would fly now. But it certainly, we believe, is very relevant to demonstrating actual prejudice. And what would you rely on for that statement? Are there any classic cases that tell us the factors to rely on for actual prejudice that would support your view? I think the Ambrose decision, it did state, as Judge Sutton reiterated, that the most important factor is the strength of the evidence. But that doesn't have to do whether there are four African Americans on the veneer. So if you could answer my question. Yes. I think it doesn't preclude it. I don't know that... You don't have any cases. No. Not that I'm aware of. For help as opposed to... But you don't have any cases. I don't have any cases, no. For looking at the veneer for the actual prejudice prong. No. I have to concede that point. I don't have any cases. Why isn't the simplest path here that if the most important thing is the strength of the evidence, and they're not arguing strength of evidence, why is, I mean, that's not going to be a lot of claims. It just happens to be this one. And then you avoid the issue of, because I will say, it seems really strange. The 4 of 45 is not relevant to merits, but it's relevant to prejudice. That's a head-scratcher to me. It is a bit. So why would I... Why do we have to go do that? This court doesn't have to. I think it can look at the strength of the evidence in this case and determine based on that, it doesn't need to send it back to the district court. This case has been kicking around. The conviction occurred in 2001. He filed his habeas petition in 2005. We're now in 2013. We send it back to the district court. Let's just assume we do that. And the district court makes a ruling on actual prejudice. It's up here again. I mean, we're probably looking at 2015 or later. But usually we look to district courts to make factual kinds of findings. And that would be appropriate in most cases. I think this is one of those cases, though, where the evidence is so strong, it's almost indisputable that it could be denied that the evidence, the standard that Ambrose talks about, where there's a case that's so strong and a defense so weak that it's highly improbable that an unbiased jury would acquit. In this case, I mean, when you think about the facts, you had a police officer bursting into the apartment. She's screaming. He has his pants down around his knees. She's screaming. She has blood all over her face. Furniture is tumbled around in the apartment. But I'm not even sure we have to go there. He's not arguing the strength of the evidence. No, he's not. So I just, I guess I stop there. I mean, I think the legal question presented in this case is in order to show actual prejudice, do you have to make a threshold showing that there's some strength of your case? You have to have something on that balance. Well, I think that- They're not arguing there's anything on that balance. And they're saying it doesn't matter because there's enough other factors that you could potentially make up for it. And I guess my question is, is that really so? I would think you'd have to have some strength of evidence to move on. That's been our argument in the district courts. And what's happened is as we, counsel has tried to have evidentiary hearings to bring in expert witnesses about jury selection and so on. What we've tried to argue is in some of these cases, the evidence is so strong, it is a threshold question in a sense. Because that is the factor, the most important factor per the Ambrose opinion. So it's been our position in the district courts that you don't even get to this worrying about whether or not certain races would be more likely to acquit or convict or any of that scientific evidence or social science that the petitioner is trying to present in some other cases. In a case like this, I don't know how you dispute that this isn't one of those cases that falls squarely within Ambrose when it's talking about the strength of the evidence being overwhelming and a defense so weak. His defense was absolutely absurd. He made a statement and he testified at trial while I was walking down the street and she saw me and called me over and these women are always calling me to have sex with them and I sometimes give them money and I didn't see any injury on her face. Can I focus you on something else? You tell Judge Moore that you didn't know of any cases on the point for whether the actual composition of the veneer could be considered in determining prejudice. Do you know of any cases in analogous context? I'm thinking of things like, let's say there had been a problem in the selection of the veneer but it wasn't such that ultimately the panel actually selected was not representative or in a Batson situation where you ultimately end up with a representative jury even though there might have been a Batson violation in the exercise of peremptory challenges. Anything like that? Or any other context you can think of? Is there anything else that can help us out? I wish there was. This is sort of a novel situation and in fact one of the first judges to even come up with this in some respect was Judge Lawson who was the lower court judge in this case who said that he was addressing the merits that well how could you say there was a fair cross section violation when there was in fact four African Americans on this particular jury veneer. We're taking that and we're saying well alright he's now and I concede obviously Judge Lawson has said in another case that he now repudiates that language in this particular decision and that's fine but I don't think that precludes us from saying it is a relevant factor beyond the threshold question of the actual evidence presented and the strength of the evidence presented. Could you address the Batson challenge? Absolutely. I'd be happy to do that. What happened here was and I think it's important to really look closely and one of the things I did when preparing for oral argument as well as the attorney from my office who wrote this brief was look very closely at the voir dire. And before I even get into that the Batson claim itself is the state appellate court found that error had been waived and therefore any error was extinguished. It also said the claim was forfeited. So in some respects the underlying Batson claim that itself was waived, error was extinguished. Alternatively it could be considered a procedural default. Now the ineffective assistance of counsel claim that was in our position addressed by the Michigan Court of Appeals and I think they're pretty clear in stating that based on the record we have before us, based on this record we don't see any evidence of misconduct on the part of the prosecutor. Doesn't the Court of Appeals, isn't the problem here that the Court of Appeals doesn't reflect any understanding of the paradigm that the Supreme Court has established within which these Batson issues are to be considered? I mean on this record had an objection been made the proper conclusion would have been that there was a prima facie case of discrimination and the prosecutor would therefore have been called upon under that paradigm to explain, I mean to explain and we would have gone on from there but the pattern of challenges under the applicable paradigm itself provides the evidence of discrimination, doesn't it? Well I think the record of this case reflects, I think you can reasonably infer and I think this is what the Michigan Court of Appeals did and we have to presume looking at this as a federal habeas court giving the state court every benefit of the doubt when they said there was no evidence of misconduct on the part of the prosecutor. Do you think they were speculating by going beyond the pattern of the challenges that were exercised? No. By looking to reasons that might have? Well I, yes I think, I don't know that I would call it speculation, I think it's a reasonable inference. Well certainly the prosecutor was never called upon to provide any articulation of the reasons for the exercise of the challenge because there wasn't an objection. There wasn't an objection, that's correct. And that's part of the, and just to finish. The process was short circuited by the lack of an objection. And thus the ineffective assistance. But what had happened on its face under the applicable precedence was in fact something that mandated a finding of a prima facie case of discrimination, correct? There's nothing in the record in the voir dire transcript itself which indicates what the race of these individuals were. There were some documents that were attached to motions to remand and responses to motion to remand. The affidavits and those affidavits have come up through the habeas process as well in which there were three individuals who identified themselves as African Americans and one of the affidavits references a fourth African American and they all say I was excused peremptorily by the prosecutor from this case. And there's a fourth affidavit that says this was an all white jury. And once you have that, I think the Michigan Court of Appeals could have, and let me just very quickly say one or a couple of words about each of these four jurors. Juror Gibson made a statement about well the victim must resist and the prosecutor could have very well said well that's not Michigan law. Shabazz worked with the- So that's you speculating today. Well but I think, I wouldn't call it speculation. I think it's a reasonable inference from the record. The Michigan Court of Appeals said there's no evidence of misconduct on this record. And so you can read this and say oh okay, this is why Shabazz was removed because he worked with defendants in a ministry context. You're talking about the Michigan Court of Appeals. Is this the opinion of August 2003? Is that the opinion? Yes. I believe so. Yes. And what- As I see it, it just simply says nor does the record indicate that the prosecutor exercised her peremptory challenges to remove African Americans from the jury because of their race. And that's- That's- I just was wondering if there was something else that you were relying on that I had missed. No I think that's- That's the transcript. You're relying on the transcript and you're- The transcript- Fitting out scenarios that might have made sense but were not articulated. Right. And on habeas- Well but I mean that's the way it works. You have an opinion and you have a transcript and you decide whether the opinion and the transcript match. Right. And that's federal habeas practice. That's what Richard- The nature of peremptories is that, you know, you're ordinarily not called upon to explain them. That's correct. That's and constitutes an exception to that. That's correct. And we can assume from the facts or the presumption under Strickland and the double deference afforded Strickland and under AEDPA is that he performed objectively reasonably, that there wasn't deficient performance. So he observed all of this occurring. The attorney said, I'm not going to object. I don't see a problem with this. And that's a reasonable inference from the facts of this case. And I think looking at the- what the Michigan Court of Appeals did, I think there's nothing wrong. That simple statement, Judge Moore, is enough to say there's a merits adjudication here. And let me just very quickly say, what would be the point of having a hearing even six months or six years later? I mean, quite frankly, the time to do it would have been right when all of this was occurring. It's going to be very difficult whether it was six months later or now six years down the road for the prosecutor to say, well, I've tried hundreds of cases since then. I don't know. But I don't know how that cuts, because I just think that shows the cost of victory is a new trial. It just proves there's a new trial. I don't know. I mean, I assume courts have said that. You wouldn't now round everybody up and decide whether you can sustain the verdict based on everyone's memory all these years ago. I would have just thought courts would say, listen, if we got this kind of a problem, we're having a new trial. Well, I think the prosecutor, what should have happened, if I may answer your question, what should have happened if the defense counsel believed that there was a potential Batson issue occurring, was stand up and object. So there would have been a contemporaneous record. So it's now raised as an IAC claim. That's correct. Right. And so what, in your view, should have happened that didn't happen to make the IAC claim a valid claim? Well, the Michigan Court of Appeals denied the motion to remand. Then it looked at the existing record and said, look, there's no need for any further record here. Based on the record we have, we see no evidence of any kind of misconduct on the part of the prosecutor. And under habeas law, that's enough. That's a merits finding, and it's entitled to all the- What's the inquiry, the correct one, though? I mean, the record wouldn't show at that point. But if the legal frame, the analytical framework permits or requires a finding of discrimination on this record, then that analytical framework would provide the inference of discrimination, not some affirmative evidence as to what was in the prosecutor's mind. Well, and when I have seen these hearings, if I can continue to answer your question, they tend to go through the whole gamut, even when they're done later on. I mean, that seems to be the history. What I've seen, these cases come back for evidentiary hearings on a motion to remand or even in a federal court context. So that seems to be, everyone's trying to justify what happened. The prosecutor's trying to recall, well, I did what I did. Defense counsel's trying to recall, well, why didn't I object? And it's just a difficult thing to do any time other than contemporaneously. Right. But assuming that there is a potential IAC claim, there has to be some way that this can be gotten into in an appropriate case. In an appropriate case. This one was not an appropriate case. Because the record itself demonstrated there was no misconduct on the part of the prosecutor. They looked at the- And we can test that out by looking at what the questions were. Yes. And the colloquy in the voir dire. On Habeas Review, that would be exactly how we believe it should be done. Thank you. Thank you, Your Honors. The record in this case establishes, quote, the prosecutor removed each of those African Americans by peremptory challenge and had a racial purpose for doing so. Where did you get that? That's from the factual allegations in the motion to remand for an evidentiary hearing filed within a year of conviction with the Michigan Court of Appeals. The Court of Appeals rejected that. The Court of Appeals rejected a hearing to test that. That is an allegation. He can't be faulted, as Judge Morpeth, he can't be faulted. What could he have done differently? If there is a cognizable claim for ineffective assistance of counsel for failing to raise a Batson objection, if that is a cognizable claim, where in the world is his opportunity to prove that claim? I suppose, I'm just now speculating, but I suppose that defense counsel could have affidavits that he could present to, I'm making this up so you tell me that I'm wrong, fine, that he could present to the Michigan Court of Appeals that then a reviewing court, i.e. the Michigan Supreme Court or a habeas court could investigate. He had affidavits from three African American jurors and a fourth juror saying that it was an all-white, all-white pettit jury. So out of the four people? Three people, one of whom says there was a fourth and another juror who says it was an all-white pettit jury. He did not get an affidavit from the prosecutor saying I'm a racist. Right. Apparently that is, in their mind, the only thing that could possibly render this decision unreasonable. So there were affidavits presented to the Michigan Court of Appeals. Yes. The Michigan Court of Appeals then denies a hearing. Yes. In a separate order from this August 03 or is this the one? First they denied a hearing and then in their opinion they say, you never moved for an evidentiary hearing. So we're not going to reach this. And then a couple paragraphs later I think they said, you moved for a hearing and we previously denied it. So we're stuck with the record we have and you haven't proven that the prosecutor was racist. It's, it makes you bang your head against the wall and this court has an opportunity. I understand the practical difficulties. What's our, tell me exactly what you're asking us to do. You're saying the, there is a constitutional requirement to have the hearing? That that was the mistake? I mean, because obviously courts of appeals can rule as a matter of law on some things and they can look at the allegations and compare them to the transcript, right? I mean, you can make the argument that that doesn't work here because you're going to miss too much or you've got this whole problem of what does the transcript really reveal if certain questions weren't asked. But. I'm not saying the Michigan Court of Appeals has to remand for a hearing every time somebody asks for one. Okay. What I'm saying is that when they refuse, when this court refuses to remand for a hearing to develop the actual facts, what actually happened, then it binds itself to the allegations the petitioner makes. Here, I mean, how many years before Pennholster were we, he made the strongest set of possible allegations he could have made and still didn't get that hearing. That's, that's the record against which the reasonableness of the state court decision is judged. That's not his problem. That's not this court's problem. If the Michigan courts want questions of IAC and Batson and things like that to be resolved when people's memories are clearer, when they might recall the case. What part of EDPA do we, what part of EDPA are we using here? Are we saying this, when they say, because I guess the key point was they thought it was not ineffective assistance, prong one, wasn't a failing in prong one, because they didn't think there was a problem. So their first point, our idea is to say that was clearly unreasonable or. The record before the state court did not allow for the reasonable rejection of the Batson Strickland claim, okay? That was, and we have to clear 2254D. There's still a question, and we have proof problems, and they have proof problems. There's still a factual question, though, of whether or not there was a Batson Strickland violation. And that's going to be a de novo hearing in federal court. As the 7th Circuit said now, the 5th Circuit said now. It gets better, but it's up to the state courts. If you want the protection of this extremely deferential standard, give them the hearing yourselves. You know, it strikes me, I think we're back to kind of where we started from, but the way you have articulated and structured this particular issue in your brief, in your argument, sounds more like you are arguing that we have somehow can review the discretionary denial of an evidentiary hearing in state court. It's actually, I mean, the stronger position is that you're not precluded from getting a federal evidentiary hearing under the statute, but then you've got to show, you've got to take what actually happened  or actual constitutional violation or the, and the reasonableness or unreasonableness of the state court action. It just doesn't seem to me it's presented in exactly the way that is most calculated to lead to what you want. Well, perhaps that's a shame. That's not a, that wasn't intended to be critical. It was just, it comes across almost as this. I think there are two ways to structure the 2254D argument. Either the state court was unreasonable for denying a hearing. That wasn't my, that's not the way I chose to frame it. Yeah, I don't think you can... I believe the state court decision on the record before it, per pinholster, strictly looking at the record before it, the state court decision was unreasonable, because when somebody makes those allegations and asks for a hearing to prove them, you're stuck with those allegations if you don't give them that hearing. That was an unreasonable decision. You, I kind of get what you're saying, but you're saying we only think of the allegations. That's not quite true. There still is a record. Oh yeah, I'm not saying in every case, allegations get you a hearing. On top of the record that does exist. Right. The record here doesn't allow for the reasonable, the record doesn't say what the prosecutor's motives were, except for in these allegations that say they were racially discriminatory. No, but he was reading some, that there were some explanations for what the prosecutor did. That's nice, but that's not what she said. That's not what the prosecutor said. You're saying it's not in the transcript. No, I'm saying that was not her reason for, we're coming up with reasons that may have supported a non-discriminatory, non-Batson-violating. I'm just asking about reasons that are in the transcript. Are there not some in the transcript? No, we don't have the Batson inquiry, the three-step Batson inquiry that has to take place in these circumstances. We don't have it. We're putting it together. We have his allegations and that's it. Thank you very much. Thank you very much. And you're the federal public defender, so we've been thanking the Criminal Justice Act people. We will thank you. We thank you for your representation of the state. Thank you both. It's an interesting case and it will be submitted.